Good morning, your honor. My name is Ben Coleman. I represent the appellant, Mr. Ziska. Unless the court had a different preference, I was going to start with the first issue and also try to jump to the third issue if I have time, and I'll watch the clock and try to save about a minute for rebuttal if I can. With respect to the first issue, it's our position that the government presented insufficient evidence to demonstrate that Mr. Ziska intended for a deadly weapon to be used, which is a required element to convict him of aiding and abetting assault with a deadly weapon. In particular, in a case that we cited in our reply brief, United States v. Coleman, which was authored by Judge Graber, we believe that the facts in that case are much more demonstrative of the requisite intent for an aider and abetter, and this court found that there was insufficient evidence. Here, basically, the evidence is that Mr. Ziska, a prison guard, told this member, a shot caller of the Nazi low-rider prison gang, that this other particular inmate, the victim, he gave him some paperwork on an incident that alleged that that victim had raped his cellmate and said he ought to look into it. That's the language. But your client knew what the penalty was in this gang for raping an inmate. I don't believe there's any evidence that there was any specific penalty that applied. As far as I'm aware, and the government hasn't cited in their brief, there was no expert testimony or any testimony from a member of the gang that says that the specific penalty for raping your cellmate is to get stabbed. I don't believe there was any testimony to that effect. And essentially, the testimony, in fact, I believe is that there are two types of prison assaults. One is called a, quote-unquote, checking, which means that you just get beat up with your fists, and the other is called a, quote-unquote, whacking, which is where there's a stabbing. And that's the evidence in the case, is that the inmates that testified said there are two types of prison assaults, and there was no testimony that for this specific incident, the penalty was a whacking as opposed to a checking. So it's our position that there's simply just insufficient evidence. The government didn't take that next step. Well, wasn't there evidence that your client was tied in with this group for a number of years? Yes, I believe there was. So then you can draw from that that he was part of them and that he was facilitating their activities, and so you can infer from that that he knew what would happen when he moved people around and what the consequences were. And we're agreeing and we're assuming that he knew that he would be assaulted, but the question is, did he know and intend that he would be assaulted with a deadly weapon? And I don't believe that there's any evidence in the record to demonstrate that, for this supposed violative conduct of the gang's rules, that he would be assaulted with a deadly weapon. Now, even to reach this issue, since this is the second appeal. Correct. You've got to show that there's really been a change in law here. What's your best shot at showing us there was a change in law since you've been here, you were here the first time? Right. Well, I personally wasn't here the first time, but I understand the case. I understand the case. We say Ortiz Magana is our best shot. That was the case that was decided several months after this first appeal, and that's the case where this Court clarified that for an aider and abetter to be guilty of assault with a deadly weapon under California Penal Code Section 245, the aider and abetter have to have the intent that a deadly weapon be used. Now, in light of the Supreme Court of California's decision in People v. McCoy, what wiggle room do you have? Excuse me, what? People v. McCoy, M-C-C-O-Y. Right. Well, I don't know if that case has been cited, so I'm not familiar with that case in particular. What I do know is that the Ninth Circuit in the case called Juan H. has suggested when this ñ before the first appeal came to this Court, this Court has suggested that you didn't necessarily need to have that intent. But then subsequent to the first appeal, this Court in Ortiz Magana did suggest that you ñ and held that you did have to have that requisite intent. And that's where we think the change in the law occurred. Well, I'm just ñ I'm just scrimming. You have to show more than a suggestion, it seems to me. You've got to show ñ first, law has changed. The first time around, that decision was wrong. Right. And our position is that in Juan ñ in the case of Juan H., which was a 2005 Ninth Circuit decision, which we've quoted at pages 2 through 3, this Court specifically stated that an aider and abetter could be found liable for a violation of California crime and the offense committed by the Confederate was a natural and probable consequence of the target crime that the defendant aided and abetted. That was this Circuit's law in 2005. Then when Juan H. is decided after the first appeal, this Court specifically says that you do have to have ñ that that's not necessarily correct, that you do have to have the intent. The aider and abetter does have to have the intent that a deadly weapon would be used. I'd also suggest that to the extent that the Court is questioning this, that under fundamental fairness, if the Court agrees on the merits that there was insufficient evidence, I would suggest that the fundamentally fair thing to do would be to reverse the conviction. And again, we're not asking for all of these convictions to be reversed, but this would be the one conviction that carries the highest guidelines. This is not a gentleman that's going to walk away scot-free. He's still going to have two felony convictions and a substantial sentence. In fact, he's already done, I think, well over five years in custody already. So we're not suggesting that this whole case is going to be thrown out. But out of fundamental fairness, if the Court agrees with the merits of the sufficiency claim, I don't see any reason why the Court should not vacate that one count of conviction. With respect to the sentencing guidelines issue, I would like to point out that even if the Court disagrees with the conviction argument, our third argument on appeal I think demonstrates, and I think the government has frankly conceded, that Mr. Ziska was assessed two additional guideline points that he shouldn't have been assessed. And under, basically what the PSR did in this case is it applied 2E1.1, and this is kind of a complicated guideline analysis here, but the PSR included two points for acquitted conduct that Mr., for conduct that the district court had acquitted Mr. Ziska on, and that was for a particular assault. And I think the guidelines are fairly clear that under 2E1.1, assault is not a racketeering activity, and the government does not dispute that in their brief. And therefore, both the PSR and the district court just simply erred in including those extra points for that particular assault. So at the very least, it's our position that the case should be sent back down for resentencing with respect to that additional two points. And if there are no other questions, what I'll do is try to save the remaining time for rebuttal. May it please the court. Kevin Lally on behalf of the United States. This court, in resolving defendant's initial appeal, directly considered and rejected as meritless. Defendant's claim that the government had failed to provide proof beyond a reasonable doubt as to the element of intent sufficient to sustain his by-car conviction. That finding is the law of the case and is dispositive of the evidence he claimed. Now the court, Judge Ripple asked, what would be your best shot for getting around circumventing the law of the case in this instance? And the defendant stated that it was Magana Ortiz. That's his best shot. It's a shot that falls woefully short. Because in Magana Ortiz, this court never attempted, never claimed, and in no way made any changes to existing California law on aid or the intent necessary to establish aiding and abetting liability. On the contrary, it was a completely inabsent case that dealt with the incredibly discreet issue of whether an individual convicted of aiding and abetting under California state law would qualify as an aggregated felon for immigration purposes. That's it. To the extent that it referenced longstanding California law on aiding and abetting liability, it did so simply to further its analysis and to explain its rationale for its ultimate conclusion with respect to the one issue that it was considering. But again, that issue was not anything that required it to make any change or any clarification on that existing California law. The fact that this legal principle, it has been a longstanding, has been a longstanding principle within California law, is well-established. And for purposes of this court, what's most important was, was it well-established at the time that the defendant filed his initial appeal? And that point is proven out on several different levels. It's proven out by the fact that defendant's counsel at the time of the initial appeal cited the correct standard. It's pointed out by the Juan H. case, cited by the defendant, where in the body of that decision, 2005 case, the Ninth Circuit expressly noted that in order to establish aider and abetting liability, the primary way of doing so was, there are two different ways. There's the primary way, which is your classic aider and abet a liability, and then there's a secondary way where you can establish a natural and probable consequence. That's what the defendant has cited. But for purposes of establishing aider and abetting liability under California state law, the Ninth Circuit realized that it was a longstanding principle in California law that the aider and abetter must share the same intent as the principal. And you also, and the Ninth Circuit in doing so, cited two decades of California law, including the McCoy case cited by Judge Ripple. But in addition to that, the California Supreme Court case in United States, or in People v. Demon, which addressed that very point and stated that the aider and abetter need to share the same intent as the principal. So this is an issue that has been well established. The defendant had it available to him. It was actually what was presented to the court in the last appeal, and there is absolutely no basis for revisiting it at this point. However, should the court get to, get beyond that and get to the underlying facts, the government would again submit, as several of your Honors have noted, that the facts were more than sufficient in order to support the condition, which would be consistent with this Court's prior finding, that claim was meritless. The defendant, in this case, did not commit an act that occurred in a vacuum, like what occurred in the Coleman case. This was longstanding conduct. The defendant had been a member of this criminal enterprise over the course of years. This was an enterprise that had rules. Amongst those rules were that you don't engage in homosexual conduct. Another one of those rules for its members of the enterprise and for rape by members of the enterprise was to be stabbed. This was known by everybody. In fact, the defendant admitted it himself when he stated that essentially the offense conduct that Mr. Johnson had committed by raping his cellmate would get you assaulted, and in that point, the only assault that anyone was discussing was a stabbing, would get you stabbed anywhere. So this was conduct that a — or so the defendant well knew that when he then proceeded to bring forth the information relating to that assault, that the end result would be that Mr. Johnson would be stabbed, and that is, in fact, what occurred. And so the government would submit that the evidence, as this Court previously has found, was sufficient and the defendant's claim is meritless. Turning to the sentencing argument, the government would note that the particular argument that the defendant is now raising, the argument that you must look to the RICO offense in order to get the two-level enhancement, that much like all of the defendant's other sentencing arguments, this is an argument that's made late to the game, and in fact, this particular argument has been raised for the first time in defendant's reply brief in this matter. The government would submit that the issue is waived, and even had it not been waived, that it would otherwise not withstand plain-error review, because this is a claim that has, in fact, been raised for the first time on appeal. The government — and with respect to plain-error review, the government would just briefly note that the error wouldn't be — the issue cited by the defendant wasn't plain to this Court, it wasn't plain to the district court, it wasn't plain to the government, and the government would submit that it's not erroneous under any respect. If no members of the Court have any questions, I would submit on the papers. Thank you. A few quick points. First, this — the prior decision of this Court, as far as the procedural issue as to whether the attack on the conviction can be raised now, simply says, Ziska's sufficiency of the evidence claim is without merit. The trial court's credibility determinations are supported by the record. That's all this Court said the first time. Basically, it treated the argument as if it was an argument about credibility, and that's obviously not the argument we're making here. We're assuming the credibility. So I don't really think that this Court's prior decision entertained and really got to the substance of the claim. I think the Court should take a look at it now. The government has just said that it was well-known that the penalty for rape was to be stabbed, that if you rape your inmate, you'd be stabbed. It's great for the government to say that, but they haven't came into one portion of the record, and even today they haven't. That confirms that. In every single excerpt record and record citation that they raised in their briefs, we responded to. There is not one record citation that says that the penalty for raping your cellmate is to be stabbed. There's just no evidence of that. So while you can say that up at oral argument, that doesn't carry the debt. You need to introduce evidence at trial. No such evidence was presented. The government claims now that the argument as to the guidelines was raised the first time in the reply brief, and therefore it's been weighed. Absolutely untrue. At pages 18 through 23, the issue is well-briefed in the opening brief. The argument has specifically been made that the district court and the PSR incorrectly applied 2E1.1 and attributed all these points and got this grouping, raised the level up to a 34 when it should have been a 32. It's been specifically raised that under 2E1.1, the appropriate guideline level is in fact at most a 21, not a 34. It wasn't raised for the first time in the reply brief, and the government has resorted to that the district court and the PSR heard in applying 2E1.1 in this case. And there's what they're trying to do is say, well, it wasn't raised below, and our arguments are that, number one, in any event, it's a plain error. It's plain from the language of the guideline. Number two, that Mr. Zisco is representing himself with what we claim to be a defective FREDA waiver. And in any event, when you look at the fact that he was not raised in the reply brief, the difference between the two points is basically the difference of about five years. And that's a type of substantial right that should be noticed on the plain error test, even assuming the court applies plain error. But clearly, the argument was raised in the opening brief. This latest contention that it was first raised in the reply brief is just simply wrong. Thank you.
judges: Pregerson, Ripple, Graber